2005 WY 157

Alta **WELTY;** Welty's Inc., a Wyoming corporation; Welty's General Store; and Welty's General Merchants, **Appellants (Defendants),**

v.

Lois I. **BRADY, as Bankruptcy Trustee for Johanna P. Welty, Appellee (Plaintiff).**

No. 05–73.

Supreme Court of Wyoming.

Dec. 8, 2005.

Representing Appellants: Joe M. Teig and Paula A. Fleck of Holland & Hart, LLP, Jackson, Wyoming. Argument by Mr. Teig.

Representing Appellee: Robert M. Shively and Amy M. Taheri of Shively, Taheri & Rochelle, P.C., Casper, Wyoming. Argument by Mr. Shively.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Alta Welty, Welty's Inc., Welty's General Store, and Welty's General Merchants (collectively referred to as "the Weltys") appeal from the district court's order confirming an arbitration award in favor of Johanna Welty (Johanna)[1]. The Weltys claim the district court should have vacated the arbitration award because Johanna engaged in fraud to procure the award and the arbitrators committed manifest mistakes of fact and law. Finding no error, we affirm.

## ISSUES

[¶ 2] The Weltys state the issues on appeal as follows:

This appeal raises the issues of whether the District Court erred in its application of the Uniform Arbitration Act and Wyoming case law which provide that arbitration awards procured by fraud, or mistake

---

**1.** Johanna declared bankruptcy while this action was pending, rendering this claim an asset of the bankruptcy estate. An order substituting Trustee

Louis I. Brady as appellee was entered on August 16, 2005.

of fact or law, must be vacated. More specifically, the issues for review are:

A. Did the District Court err as a matter of law when it refused to vacate an arbitration award based on newly-discovered evidence that the award was procured by fraud?

B. Did the District Court err as a matter of law when it refused to vacate an arbitration award based on the mistakes of fact and law committed by the arbitration panel?

Johanna articulates a single appellate issue:

After finding that Appellants did not show by clear and convincing evidence that the arbitration award was obtained by fraud or a manifest mistake of fact or law, did the District Court properly deny the Defendants'/Appellants' Motion to Set Aside the Arbitration Award?

## FACTS

[¶ 3] Alta Welty and Frank Welty, Jr. (Alta and Frank Jr.) owned and operated a general store in Dubois. The store, which had been in the Welty family for many years, operated as a proprietorship under the business names Welty's General Store or Welty's General Merchants until it was incorporated as Welty's Inc. in 1992. Alta and Frank Jr. had a child, Frank Welty, III (Frank III).

[¶ 4] Johanna married Frank III on December 29, 1973. Alta and Frank Jr. attended the wedding festivities and, according to Johanna, presented the newlyweds with several wedding gifts, including a check for $20,000 to each of them. Alta then directed the couple to write two separate checks returning the money to Welty's General Store, with a notation on the memo line indicating the checks were a loan to the store with interest at ten percent (10%) per annum. Johanna claimed the same gift/loan transaction occurred for twelve years, from 1973 through 1984. Thus, she maintained, over the years, she received $240,000 as gifts from Alta and Frank Jr. and returned the funds as loans to Welty's General Store at ten percent interest. Based upon conversations with Alta, Johanna believed the loans would be repaid when she and Frank III took over the store at a reduced price.

[¶ 5] Johanna and Frank III settled in California with their daughter, although Frank III lived and worked in other locations during their marriage. Johanna often worked in the general store during the summers and purchased items for resale in the store, without compensation. She also performed the work necessary to have the store listed on the National Register of Historic Places, again without compensation. Frank Jr. passed away in 1994, after a lengthy illness.

[¶ 6] On February 23, 2000, Frank III served Johanna with divorce papers, beginning a long and bitter divorce battle in California. On July 12, 2002, Johanna's attorney sent a letter to Alta, formally requesting repayment of the loans. Johanna did not receive a response to her demand and, consequently, filed an action in federal district court against the Weltys. The federal court complaint included two counts: breach of contract for money lent and promissory estoppel. The parties undertook discovery, including taking the depositions of Johanna, Alta and Frank III. The Weltys moved for summary judgment on both counts. The federal district court granted summary judgment to the Weltys on Johanna's breach of contract claim, finding that the statute of limitations had expired, but denied the Weltys' motion for summary judgment on Johanna's promissory estoppel claim.

[¶ 7] The parties agreed to submit Johanna's promissory estoppel claim to binding arbitration before a panel of three arbitrators. The arbitration agreement was signed by Alta and Frank III, on behalf of all of the defendants. The parties agreed to forego an evidentiary hearing before the arbitrators and submitted the case to the panel upon briefs, exhibits, and counsel's oral arguments. The arbitration panel held a hearing on May 7, 2004, and issued its decision on June 4, 2004, awarding Johanna $837,500, together with interest in the amount of $65.75 per day, effective May 8, 2004.

[¶ 8] On June 9, 2004, Johanna filed a motion for confirmation of the arbitration award, and the district court set a hearing on

her motion. Prior to the hearing, the Weltys filed a motion for a continuance, requesting additional time to prepare a motion to vacate the arbitration award. The district court granted the Weltys' request for a continuance and gave them until September 2, 2004, to file a motion to vacate the arbitration award. On that day, the Weltys filed a response opposing Johanna's motion for confirmation of the arbitration award and requesting vacation of the arbitration award. The Weltys also sought leave to supplement the arbitration record with newly-discovered evidence of fraud. They claimed to have recently discovered bank statements and canceled checks, which showed Johanna lied when she testified Frank Jr. and Alta had gifted her $20,000 per year from 1973 through 1984 and she had loaned those funds to Welty's General Store.

[¶ 9] The district court held a hearing on the parties' motions and, subsequently, entered an order denying the Weltys' motion to set aside the arbitration award and a judgment confirming the arbitration award. The Weltys filed a notice of appeal from the district court's orders.

## STANDARD OF REVIEW

[¶ 10] Wyo. Stat. Ann. § 1–36–114 (LexisNexis 2005) articulates the statutory bases for vacation of an arbitration award. Section 1–36–114 states, in pertinent part:

(a) Upon application of a party the court shall vacate an award where:

(i) The award was procured by corruption, fraud or other undue means;

(ii) There was evident partiality by an arbitrator appointed as a neutral, corruption of any of the arbitrators or misconduct prejudicing the rights of any party;

(iii) The arbitrators exceeded their powers;

(iv) The arbitrators refused to postpone the hearing upon sufficient cause being shown, refused to hear evidence material

to the controversy or otherwise conducted the hearing as to prejudice substantially the rights of a party; or

(v) There was no arbitration agreement, the issue was not adversely determined by a court as provided by law and the applicant did not participate in the arbitration hearing without raising the objection. The fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

[¶ 11] In addition to the reasons articulated in the statute, our case law sets out other bases for vacation of an arbitration award. However, the scope of judicial review of arbitration awards is very narrow. As such, we have stated that an arbitration award may be vacated if the appellant shows by clear and convincing evidence that the award

"was obtained by fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law appearing upon the face of the award...."

*Matter of Town of Greybull,* 560 P.2d 1172, 1175 (Wyo.1977) quoting *Riverton Valley Electric Assoc. v. Pacific Power and Light Co.,* 391 P.2d 489, 500 (Wyo.1964).[2] *See also, Texas West Oil and Gas Corp. v. Fitzgerald,* 726 P.2d 1056, 1062 (Wyo.1986). Clear and convincing evidence is the " 'kind of proof which would persuade a trier of fact that the truth of the contention is highly probable.' " *Alexander v. Meduna,* 2002 WY 83, ¶ 29, 47 P.3d 206, 216 (Wyo.2002) quoting *MacGuire v. Harriscope Broadcasting Co.,* 612 P.2d 830, 839 (Wyo.1980).

[¶ 12] When reviewing the district court's order after an arbitration, we " 'undertake a full review of the record without deference to the views of the trial court.' " *JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1194 (Wyo.1992) quoting *Inter–Mountain Threading, Inc. v. Baker*

---

2. Johanna argued to the district court that the parties' arbitration agreement limited the scope of judicial review to the bases set out in § 1–36–114. She argued the agreement prohibited review of the common law bases for vacation of an arbitration award, including manifest mistakes of law or fact. Johanna does not, however, continue to argue before this Court the standard of review is limited to the statutory bases. Consequently, we will apply the standards of judicial review found in our statutes and case law.

*Hughes Tubular Serv., Inc.*, 812 P.2d 555, 558 (Wyo.1991). "[T]he issue of whether the arbitrator exceeded his authority is primarily a question of law. We owe no deference to the trial court's determination of questions of law." *JBC of Wyoming Corp.*, 843 P.2d at 1194.

## DISCUSSION

### A. Fraud

[¶ 13] The Weltys claim the arbitration award should have been vacated on the basis of fraud, pursuant to § 1–36–114(a)(i), because the arbitrators relied upon Johanna's perjured testimony about the gift/loan transactions. In a related argument, they also claim the district court erred by refusing to consider the newly discovered bank statement evidence.

[¶ 14] We will consider first the Weltys' contention that the district court erred by denying their motion to supplement the record and allegedly refusing to consider their "newly discovered" evidence of fraud. The district court's order does not contain a specific ruling on their motion to supplement the record. The Weltys argue that the district court's quotation of language from *Mole v. Queen Ins. Co. of America*, 14 A.D.2d 1, 217 N.Y.S.2d 330, (N.Y.App.Div.1961), as follows: "[t]he purpose and nature of arbitration are wholly incompatible with the entertaining of motions for rehearing on the ground of newly discovered evidence," indicates the district court denied their motion to supplement the record. We believe, however, the Weltys misinterpreted the district court's rationale. Other statements in the district court's order clearly show the district court did consider their supplemental evidence for the limited purpose of determining whether there was clear and convincing evidence of fraud. The district court was not, however, persuaded by the supplemental evidence and concluded the Weltys had not met their evidentiary burden.

[¶ 15] We turn next to the Weltys' substantive claim that Johanna procured the arbitration award by fraud. The Weltys contend their supplemental evidence proved Johanna lied during her deposition when she described the twelve annual gift/loan transactions. The Weltys' supplemental evidence of fraud included: recently-located bank statements from a Welty's General Store account at a Riverton bank for the years 1973 through 1978, part of 1979, 1980 and 1981; and the statements for a Welty's General Store account at a Dubois bank for the years 1973 through 1981. The bank statements simply reflect the amounts of debits and credits. They do not specify the check payees or the sources of deposits. The bank statements do not specifically document the checks written to Johanna for the $20,000 per year gift or deposits of the loan proceeds. There were, however, two $20,000 deposits shown in the statements.

[¶ 16] The panel reviewed the check stubs from the same two accounts at the arbitration hearing. Like the bank statements, the check stubs did not show the yearly transactions claimed by Johanna. Thus, the bank statements merely corroborated the evidence already considered by the arbitrators. On the entire record, the arbitrators found that the credible testimony of the witnesses, together with the available documentary evidence, compelled a finding that Johanna had made the loans. Johanna testified about the twelve yearly gift/loan transactions, but did not identify any particular account the gifts came from or into which the Weltys deposited the loan proceeds. Furthermore, Alta testified that she and her husband had other accounts in addition to the two accounts represented by the bank statements. Thus, the bank statements from the two accounts did not conclusively establish that Johanna lied about the gift/loan transactions.

[¶ 17] Further, the arbitrators considered other evidence which supported a finding that the gift/loan transactions existed. Johanna testified that her husband, Frank III, kept copies of the checks received from his parents each year and copies of the checks returning the funds as loans to the general store. At the hearing, she submitted copies of the checks showing the transactions in 1982, 1983, and 1984. The copies of those checks were kept in a safety deposit box in an envelope labeled by Frank III as "copies of checks evidencing loans to Welty's Store."

She also presented copies of deposit slips from her own accounts, showing deposits of $20,000 into her account in 1980 and 1981. Each deposit slip contained a notation indicating the source of the funds was a gift or "annual gift" from Alta and Frank Jr. Johanna testified that, for the years 1973 through 1980, the copies of the checks were kept in a business safe, which mysteriously disappeared from their California home in 1994. She was, therefore, unable to offer copies of the checks for those years. Johanna did, however, present a copy of a deposit slip, showing a $20,000 deposit into her account in 1974.

[¶ 18] In addition to the bank account information, Johanna offered other evidence which supported her position. She presented copies of financial statements, dated 1985 and 1990, for "Mr. and Mrs. Frank Welty, III." The statements were prepared by Frank III and represented that he and his wife owned over $300,000 worth of equity in the family business. Johanna also proffered a copy of a certified letter which she sent to Frank III in 1987, which summarized the loans made to Welty's General Store over the years and the value of Johanna's work in having the store building placed on the National Register of Historic Places. She testified that he asked her to prepare and send the letter to him so that he could use it in negotiating a purchase or lease of the store from his parents. A 1983 letter from Alta and Frank Jr. lends further credence to Johanna's claim that it was the intent of the parties to have Frank III and Johanna eventually take over the store. The letter details many of the store operations and includes advice from Alta about how to make it profitable.

[¶ 19] The bank statements the Weltys presented in support of their fraud claim simply are not sufficient to undermine the other evidence presented in the case and certainly are not adequate to convince a trier of fact it is highly probable that Johanna lied about the gift/loan transactions. The district court properly denied the Weltys' motion to vacate the arbitration award on the basis of fraud.

## B.  Mistakes of Fact and Law

[¶ 20]  The Weltys claim the arbitrators made five manifest mistakes of fact and/or law, requiring vacation of the arbitration award.  They maintain the panel improperly: 1) assumed Welty's Inc. was liable for the award; 2) excused Johanna's failure to provide sufficient documentation of the loans; 3) excused Johanna's failure to make a timely claim on Frank Jr.'s estate; 4) created a loan agreement in absence of clear and definite terms; and 5) ignored evidence that the gift/loan transaction was actually an "ill-advised" estate planning tool.

[¶ 21]  Several of the Weltys' claims of manifest mistake, including the lack of documentation to show the loan transaction, improper creation of a loan agreement, and ignoring evidence that the gift/loan transactions were simply estate planning devices, concern the weight and sufficiency of the evidence to support the arbitration award.  In considering the Weltys' contentions, we are mindful that "[t]his Court favors arbitration or other forms of alternative dispute resolution."  *Scherer v. Schuler Custom Homes Construction, Inc.*, 2004 WY 109, ¶ 16, 98 P.3d 159, 163 (Wyo.2004).  *See also, Stewart Title Guaranty Co. v. Tilden*, 2003 WY 31, ¶ 7, 64 P.3d 739, 741–42 (Wyo.2003); *Simon v. Teton Board of Realtors*, 4 P.3d 197, 201–02 (Wyo.2000).  As we explained many years ago in *Riverton Valley Electric Assoc.*, 391 P.2d at 498, arbitrators have broad powers to make factual determinations, and "absent a mistake upon the evidence tantamount to fraud ... or willful and intentional failure to consider it, the weight and sufficiency of the evidence" is for the arbitrators to determine.  *Id.*  In addition,

[t]he reviewing court must observe the principle that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity.  W.S. 1–36–114(a)(v)....  [W]e are reluctant to disturb an arbitrator's just solution to a controversy, even if it differs from the resolution we might have chosen, had we been in the arbitrator's place.  See *Matter of Town of Greybull*, 560 P.2d 1172, 1175 (Wyo.1977).  As a voluntary method for resolution of disputes, arbitration is em-

bedded in the public policy of Wyoming and is favored by this court. *T & M Properties v. ZVFK Architects and Planners,* 661 P.2d 1040, 1043 (Wyo.1983). *JBC of Wyoming Corp.,* 843 P.2d at 1194. *See also, Pecha v. Smith, Keller & Assoc.,* 942 P.2d 387, 390–91 (Wyo.1997).

[¶ 22] In accordance with the parties' arbitration agreement, the arbitration panel considered the elements of promissory estoppel in its decision. The general theory of the doctrine of promissory estoppel is: "'If an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages.'" *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 813 (Wyo.1992), quoting *Goldstick v. ICM Realty,* 788 F.2d 456, 462 (7th Cir.1986). Thus, the elements of a promissory estoppel claim are: "(1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise." *City of Powell v. Busboom,* 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo.2002), quoting *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 253 (Wyo.2000). *See also, Parkhurst v. Boykin,* 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo.2004). "'The party who is asserting promissory estoppel is assigned the burden of establishing all of the elements of the doctrine with a standard of strict proof.'" *Roussalis,* 4 P.3d at 253 quoting *B & W Glass,* 829 P.2d at 819.

[¶ 23] The panel concluded Johanna had satisfied the elements of promissory estoppel. In particular, the panel found:

\* \* \*

7. The credible testimony of the witnesses and the available documentary evidence compel a finding of loans in the form of bank checks from Plaintiff Johanna P. Welty to Welty's General Store in the amount of $20,000.00 per year for twelve years, beginning on or about January 1, 1974 and concluding on or about January 1, 1985, with notations that the payment was a loan to bear interest at ten percent per annum. The agreement to repay such loans at said rate was clear and definite.

8. Plaintiff Johanna P. Welty relied on the agreement to her detriment by forbearing to make demand for payment when more documents evidencing the agreement would have been discoverable, as well as uncompensated work over the years.

9. The equities support the enforcement of the agreement between the parties to the extent provided herein. It would be unjust for Alta Welty to, retrospectively, deprive Plaintiff Johanna P. Welty of the benefit of the loans under the circumstances where Alta Welty received forbearance on the repayment due to the acts and conduct which gave Johanna P. Welty reason to believe that she was building equity and would ultimately become an owner of the business.

\* \* \*

[¶ 24] We discern no manifest mistake of fact or law on the face of the arbitrators' decision. As explained fully in the fraud discussion, *supra,* there was evidence to support Johanna's claim that Alta and Frank Jr. had promised to repay the loans when Johanna and Frank III took over the general store business. Furthermore, there was evidence that Johanna relied upon that promise to her detriment by not insisting upon repayment of the loans in the ordinary course of business and making considerable efforts throughout the years to assist with the business. The Weltys' appellate claims do not reach the level required to overturn an arbitration award and we, therefore, defer to the arbitrators' findings on the weight and sufficiency of the evidence. We also defer to the arbitrators' right to consider the relative equities of the parties and fashion an award. The arbitrators did not commit a manifest mistake of fact or law on the face of the award and, consequently, there is no legal basis to overturn their decision.

[¶ 25] The Weltys also claim the panel committed a manifest mistake of law and fact when it assumed liability on the part of the corporation, Welty's Inc. They claim,

since the corporation did not exist when the loans were made, the panel erred by making it jointly and severally liable for the award. The particular findings disputed by the Weltys stated:

4. At the time the loans were made, Welty's General Store and Welty's General Merchants were dba[ ]s for Defendant Alta Welty and her now-deceased husband, Frank Welty, Jr. The business was incorporated in 1992, and Welty's Inc. took over operation of the store, including its assets and liabilities.

* * *

10. Equity requires all Defendants, including Welty's Inc., to be jointly and severally liable for the damages awarded to Plaintiff Johanna P. Welty. The award against Welty's Inc. is justified by the fact that the checks written by Plaintiff Johanna P. Welty were actually written to the store, although it was at the time a proprietorship, and the testimony establishes that the business was incorporated and would have succeeded to all assets and assumed all liabilities of the former proprietorship, including any "accounts" in favor of Plaintiff Johanna P. Welty that were or should have been carried on the books of the prior business.

The Weltys assert there was no evidence to support the arbitrators' determination the corporation assumed responsibility for the general store's debts.

[¶ 26] However, the Weltys did not object to the panel's consideration of Welty's Inc.'s responsibility to Johanna and, in fact, specifically submitted the issue of the corporation's responsibility to the arbitration panel, when Frank III and Alta signed the arbitration agreement on behalf of Welty's Inc. The charge of the arbitrators was set forth in the arbitrator's agreement, as follows:

5. Jurisdiction of Arbitrators. The parties agree to submit to binding arbitration, under the terms and conditions of this Agreement, the following questions:

a. Whether a clear and definite agreement existed between Johanna Welty and [the] Welty[ ]s that loans of her gift money and/or the value of her various efforts on behalf of Welty's General Store would be credited to her account and repaid when she became a co-owner of the store with Frank A. Welty, III.

b. Whether Johanna P. Welty relied on her agreement with [the] Welty[ ]s to her detriment.

c. Whether the equities support the enforcement of the agreement between the parties.

d. If the questions above are answered in the affirmative, the amount which will compensate Johanna P. Welty.

[¶ 27] Although not expressed in so many words, the Weltys suggest the arbitrators exceeded their authority by finding Welty's Inc. was liable for the award. As we have stated in other cases, the parties' agreement defines the arbitrators' authority. *See e.g., Wild West Trading Co. v. gbs & h Architects, Landscape Architects, Planners, Inc.,* 881 P.2d 1070, 1074 (Wyo.1994); *Matter of Town of Greybull,* 560 P.2d at 1178. "The broad freedom an arbitrator has to resolve disputes and fashion remedies is limited by the contractual nature of the arbitration agreement from which he draws his powers." *Wild West Trading Co.,* 881 P.2d at 1074. *See also, Fox v. Tanner,* 2004 WY 157, ¶ 14, 101 P.3d 939, 943 (Wyo.2004). Of course, if an arbitration panel considers a claim not identified for resolution in the arbitration agreement, then it exceeds its authority and the award must be vacated. *JBC of Wyoming Corp.,* 843 P.2d at 1196. Nevertheless, when an issue appears to be submitted to arbitration by the parties and there is no objection to the arbitrator's consideration of a particular issue, a later claim the arbitrator exceeded its authority by considering that claim is waived. *See Riverton Valley Electric Assoc.,* 391 P.2d at 493–94.

[¶ 28] The federal district court complaint included claims against "Welty's Inc., a Wyoming corporation." The parties entered into the arbitration agreement to finally resolve the federal court litigation. The arbitration agreement specifically stated the "[arbitration] decision shall, when rendered, be fully binding upon the parties as if it were a judgment rendered in the United States District Court for the District of Wyo-

ming in the underlying action . . .". Alta and Frank III signed the arbitration agreement on behalf of Welty's Inc. The questions submitted to the arbitration panel do not, in any way, indicate the Weltys were arguing Welty's Inc. was less responsible for the loan repayments than any of the other defendants. Moreover, the Weltys did not object to the arbitrators' consideration of Welty's Inc.'s responsibility to Johanna until the matter was submitted to the district court for confirmation of the arbitration award. Under these circumstances we conclude the arbitration panel was within its authority when it considered the corporation's responsibility for the loan and, in any event, the Weltys waived that argument by failing to submit it to the arbitration panel.

[¶ 29] Finally, the Weltys argue the arbitrators committed a manifest mistake of fact and law when they excused Johanna's failure to file a timely claim upon Frank Jr.'s estate when he died in 1994. They claim, since Johanna argued that one-half of the gifts were from Frank Jr., she was required to file a claim against his estate. This argument is somewhat perplexing. It is irrelevant that the source of the funds for the loans was the gifts from Alta and Frank Jr. Johanna's claim was based upon the failure of Welty's General Store to repay the loans when they were due. At the time of Frank Jr.'s death in 1994, no disagreement had arisen regarding repayment of the loans. Johanna did not know that her loans to the general store would not be repaid until Frank III served her with divorce papers in 2000. Thus, Johanna did not have a claim against Frank Jr. when he passed away in 1994 and, consequently, she was not required to submit a claim against his estate.

[¶ 30] Affirmed.