# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 147

**OCTOBER TERM, A.D. 2022**

**November 23, 2022**

MOUNTAIN BUSINESS CENTER, LLC,
a Wyoming limited liability company,

Appellant
(Applicant),

v.                                                                    S-22-0090

FORK ROAD, LLC, a Wyoming limited
liability company,

Appellee
(Respondent).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
  Richard R. Thomas, Smith LC, Jackson, Wyoming.

*Representing Appellee:*
  Mark D. Sullivan, Mark D. Sullivan, P.C., Wilson, Wyoming; Kevin P. Gregory, Lubing, Gregory & Rectanus, LLC, Jackson, Wyoming. Argument by Mark D. Sullivan.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]     This appeal stems from an arbitration award involving a breach of a lease agreement. Mountain Business Center, LLC (MBC) won a $23,998 arbitration award against Fork Road, LLC (Fork Road). MBC appealed the award to the district court, arguing the arbitrator exceeded his authority by determining issues not submitted to him, and that he committed two manifest errors of law regarding the first-to-breach rule and determining which party prevailed for purposes of a fee award. The district court confirmed the award, holding the arbitrator's determinations were not manifest error and were within his authority. We affirm.

*ISSUES*

[¶2]          1.  Did the arbitrator exceed his authority by determining issues that were not presented to him?

2.  Did the arbitrator commit manifest error by determining MBC was not the prevailing party and thus not entitled to attorney fees?

3.  Did the arbitrator commit manifest error in refusing to apply the first-to-breach rule?

*FACTS*

[¶3]     Fork Road is the owner of the top floor of a building at 690 South Highway 89, Jackson, Wyoming, which it purchased from JAMD, LLC on April 10, 2018. At the time of Fork Road's purchase, MBC, a tenant of the building, was in the middle of a five-year lease executed in 2016. MBC leased the top floor, conducting business in a portion of the space and subleasing the remaining office space.

[¶4]     Prior to Fork Road's purchase, JAMD requested an estoppel certificate[1] from MBC listing subtenant and sublease information so JAMD could provide the information to Fork Road. MBC returned the certificate, but withheld portions of the requested information, including subtenant identities and subtenant rental payment amounts. Both JAMD and Fork Road objected to the estoppel certificate, yet Fork Road elected to purchase the property. By April 23, 2018, Fork Road gave MBC notice of default and demanded MBC vacate the premises for MBC's failure to provide the requested information. It also hand-delivered

_____

[1] An estoppel certificate assures buyers and lenders that current leases are in full force and effect and provides basic details of the lease like the term of the lease, rent, and assurances that no laws are being violated.

1

notice to MBC's subtenants that Fork Road would be taking over the subleases. MBC refused to vacate the premises.

[¶5]  On May 14, 2018, Fork Road filed a forceable entry and detainer (FED) action in circuit court to evict MBC from the building. MBC appealed the FED action to the district court, which determined the parties were bound by the arbitration clause. On June 18, 2019, Fork Road demanded that MBC leave the premises by June 21, 2019, for failure to pay rent.

[¶6]  Almost two years later, the parties presented their cases in a five-day arbitration hearing. Prior to the hearing, the parties submitted a "Stipulated List of Issues to be Determined by the Arbitrator," in which Fork Road presented ten issues and MBC presented sixteen. The arbitrator consolidated and summarized the claims, articulating seven claims by Fork Road and eight by MBC:

**Fork Road's Claims Against MBC**

[¶7]  MBC breached the lease by:

1.    Failing to provide an adequate estoppel certificate that did not set forth sublease information;

2.    Failing to name Fork Road as an insured on the MBC liability and property damage insurance policy; [ ]

3.    Failing to insert a clause in the insurance policy which would inform Fork Road of a notice of termination of the policy[;]

. . . .

[4.]   Failing to comply with the abandonment terms of the lease;

[5.]   Failing to pay rent as required by the lease;

[6.]   Damaging the office space during the move out and removing Fork Road's fixtures; and

[7.]   Failing to maintain the office space in good repair.

2

**MBC's Claims Against Fork Road**

[¶8]    Fork Road breached the lease by:

1.    Refusing to accept a proper estoppel certificate;

2.    Insisting MBC disclose confidential trade secrets;

3.    Breaching the landlord covenant in the lease;

4.    Failing to account for CAM [Common Area Maintenance] charges;

5.    Filing an FED action instead of proceeding to arbitration; and

6.    Unlawfully entering the office space on June 19, 2019, and April 23, 2018.

MBC also alleged Fork Road breached the implied covenant of good faith and fair dealing and interfered with its contractual relationships and business opportunities. In a forty-seven-page decision, the arbitrator made determinations on all issues presented and found for and against both MBC and Fork Road on certain claims and crossclaims, as follows:

**Estoppel Certificate**

[¶9]    The arbitrator concluded that Fork Road was not entitled to disclosure of the terms of each sublease, particularly rental payment amounts, and that the demand for such information and the attempt to evict MBC due to its failure to provide the information was a material breach of the lease. The arbitrator relied on expert witnesses from both parties to understand common industry practice and interpreted the plain meaning of the words in the lease. He held the estoppel certificate was governed by the lease agreement which had no clear language requiring MBC to include rental terms of its subleases in the estoppel certificate. He concluded such information was confidential and unnecessary to Fork Road. The arbitrator determined that MBC breached the lease by withholding the identities of the sublessees, and Fork Road materially breached the lease by rejecting MBC's estoppel certificate.

**Insurance Coverage**

[¶10]   Fork Road alleged that MBC's insurance policy lapsed, and MBC failed to include Fork Road as a named insured, both material breaches of the lease agreement. The arbitrator found MBC breached, but based on expert testimony, disagreed with Fork Road's

claim the breach was material. In both instances, the issues were timely cured, and no harm occurred to Fork Road. If a claim had arisen during the lapse, Fork Road would still have been insured under the policy. MBC's breach was technical, and Fork Road was not subject to harm or risk of harm, therefore Fork Road was not awarded damages for the insurance claim.

**Property Damage**

[¶11]   The arbitrator's findings on this issue were mixed. Fork Road alleged that MBC did not adequately maintain the premises and damaged the office space when moving out. The arbitrator found Fork Road, which retained the ability to inspect the property even after attempting to evict MBC, made no mention of property damages in any communications with MBC in the months preceding the FED action. He considered the small holes in the wall and floor scratches normal wear and tear and did not award damages. He found MBC liable for phone and internet wire damage, concluding the cut wires caused Fork Road damages of $5,952.

**Wrongful Entry/Breach of Covenants**

[¶12]   The arbitrator again made mixed findings on the issues related to Fork Road's entry into the premises on April 23, 2018, and June 19, 2019. Fork Road first entered the property on April 23, 2018, to give MBC's subtenants notice of MBC's departure and to encourage each subtenant to remain in the space under new leases with Fork Road. The arbitrator found this entry wrongful because MBC had not materially breached the lease at that time. Fork Road entered the premises again on June 19, 2019, upon MBC's failure to pay rent. The arbitrator found MBC's failure to pay rent was a material breach that justified Fork Road's entry to ensure its property was not being damaged or removed. Regarding MBC's claims, the arbitrator found Fork Road breached the landlord covenant that promised MBC quiet enjoyment of the property when it wrongfully entered the property in April of 2018. Nonetheless, the arbitrator concluded Fork Road did not breach the covenant of good faith and fair dealing because it reasonably believed it was pursuing its contractual rights by entering the premises. Several other minor issues were addressed with mixed outcomes and minimal impact on MBC's claims on appeal.

**Damages**

[¶13]   After parsing all issues, the arbitrator concluded that MBC sustained damages of $35,750 and Fork Road sustained damages of $11,752, entitling MBC to a $23,998 damage award. The arbitrator determined that MBC could not assert the first-to-breach rule because of its continued performance under the contract; therefore, Fork Road was entitled to offset MBC's damages with the damage it incurred.

[¶14]  MBC also asserted a claim for attorney fees as the prevailing party. The arbitrator found that because of the mixed outcome, neither party improved its position through litigation and therefore neither was a prevailing party entitled to attorney fees or costs. MBC appealed the arbitration award to the district court, and the court confirmed the award in all respects.

## *STANDARD OF REVIEW*

[¶15]  "[T]he determination of whether the arbitrator exceeded its authority involves a question of law that we review *de novo*." *Vogt v. MBNA Am. Bank*, 2008 WY 26, ¶ 12, 178 P.3d 405, 409 (Wyo. 2008) (citing *Welty v. Brady*, 2005 WY 157, ¶ 12, 123 P.3d 920, 925 (Wyo. 2005)). This Court reviews "*de novo* a district court's decision to confirm, vacate, or modify an arbitration award. . . . without deference to the views of the trial court. At the same time, this Court, like the district court, shows substantial deference to the decision of the arbitrator." *Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2021 WY 105, ¶ 34, 495 P.3d 887, 897 (Wyo. 2021) (quoting *Worman v. BP Am. Prod. Co.*, 2011 WY 54 ¶ 6, 248 P.3d 644, 646 (Wyo. 2011)). An appellant must show by "clear and convincing evidence" that an award "was obtained by . . . a manifest mistake of fact or law appearing upon the face of the award." *Id.* at ¶ 37, 495 P.3d at 899 (quoting *Matter of Town of Greybull*, 560 P.2d 1172, 1175 (Wyo. 1977)).

## *DISCUSSION*

[¶16]  MBC asks this Court to reverse the district court's confirmation of the arbitration award, vacate the award, and remand to the district court. We have held there are statutory and non-statutory grounds to vacate an arbitration award. *JBC of Wyo. Corp. v. City of Cheyenne*, 843 P.2d 1190, 1194-95 (Wyo. 1992) (quoting *Tex. W. Oil & Gas Corp. v. Fitzgerald*, 726 P.2d 1056, 1062 (Wyo. 1986)). Statutory grounds allow vacatur when the arbitrator exceeds his powers. Wyo. Stat. Ann. § 1-36-114(a)(iii) (LexisNexis 2021).

[¶17]  A trial court may vacate an award based on non-statutory grounds upon "manifest mistake of fact or law appearing upon the face of the award." *Skaf*, 2021 WY 105, ¶ 36, 495 P.3d at 898 (quoting *JBC*, 843 P.2d at 1194-95). MBC makes three arguments: (1) the arbitrator exceeded his authority by ruling on claims not submitted to him; (2) he committed manifest error in failing to conclude MBC was the prevailing party entitled to attorney fees; and (3) he committed manifest error in failing to apply the first-to-breach rule.

### I.      *The arbitrator did not exceed his authority by determining all issues presented by the parties in their stipulated list.*

[¶18] MBC alleges the arbitrator exceeded his authority by making factual and legal determinations of issues not submitted to him. "An arbitrator exceeds his powers when he

5

decides matters which were not submitted to him." *JBC*, 843 P.2d at 1196 (citing *Himco Sys., Inc. v. Marquette Elecs., Inc.*, 407 N.E.2d 1013, 1016 (Ill. App. Ct. 1980)); *see also Matter of Longwell*, 2022 WY 56, ¶ 15, 508 P.3d 727, 731 (Wyo. 2022). "An arbitrator's authority is limited by the bounds of the agreement, and courts may vacate awards that extend beyond the contractual scope of arbitration." *T&M Props. v. ZVFK Architects & Planners*, 661 P.2d 1040, 1044 (Wyo. 1983) (citing *Int'l Brotherhood of Elec. Workers, Loc. 1400 v. Citizens Gas & Coke Util.*, 428 N.E.2d 1320, 1326 (Ind. Ct. App. 1981)).

[¶19]   MBC alleges the arbitrator decided issues not submitted to him when he determined matters it asserts were waived by Mr. Hancock, Fork Road's sole member and manager. Mr. Hancock was cross-examined on the exact claims Fork Road was asserting against MBC:

> Q: Are you claiming, in this case now, that Mountain Business Center is in breach, and was in breach of the lease because it failed to get consent of the landlord to sublease, and so you now want remedy for that? Are you claiming that now?
>
> A: Yes, we are.
>
> Q: Then why'd you tell me earlier, no?
>
> A: . . . We were asking for the subleases within our Estoppel Certificate, because the Estoppel Certificate was the legal remedy for, for us to, to get the subleases. We are claiming a breach of the lease with respect to that, because the Estoppel Certificate, which is the legal remedy to get the leases, was not in satisfactory form, and did not include the subleases. That's the breach that we're claiming.
>
> Q: And nothing else?
>
> A: . . . [W]e were claiming that there was a breach with respect to the insurance.
>
> Q: And nothing else?
>
> A: I believe that's correct.
>
> Q: So those two items you just told me are the only basis of the breach of the lease that you're seeking.
>
> A: Yeah, those are the substantial acts.

Q: Okay. So I don't have to worry about asking you any more questions about the idea that . . . Mountain Business Center didn't get consent from some landlord, to sublease in the first place. That's not part of your case, right?

A: From some landlord – no.

[¶20] MBC argues this testimony waived Fork Road's other claims and the arbitrator's authority was limited to determining the estoppel certificate and insurance issues. This argument fails.

[¶21] First, the arbitrator found "[a]lthough there may be some inconsistency by Fork Road . . . [all] issues were litigated, responded to and the Arbitrator advised they needed to be determined." Additionally, he found while Fork Road's certificate and insurance claims were the focus of the hearing, Fork Road made clear it was still pursuing its other claims. These factual determinations are given great deference. *Welty*, 2005 WY 157, ¶ 21, 123 P.3d at 926.

[¶22] MBC cites no pertinent authority suggesting the stipulated list was not properly submitted to the arbitrator or how he exceeded his authority in determining those issues.[2] Instead, it offers the legal conclusion that Mr. Hancock's testimony waived Fork Road's other claims. In so arguing, MBC cites no authority that testimony by a lay witness to the substantial acts at issue may be used by a party to limit its opponent's claims. Waiver is an "intentional relinquishment of a known right that must be manifested in some unequivocal manner." *Colton v. Town of Dubois*, 2022 WY 138, ¶ 12, ___ P.3d ___, ___ (Wyo. 2022) (quoting *Jensen v. Fremont Motors Cody, Inc.,* 2002 WY 173 ¶ 16, 58 P.3d 322, 327 (Wyo. 2002)). "The three elements of waiver are 1) an existing right; 2) knowledge of that right; and 3) an intent to relinquish it." *Id.* (quoting *Jensen*, 2002 WY 173, ¶ 16, 58 P.3d at 327). Appellant fails to address any of these elements. Mr. Hancock's testimony was far from unequivocal and did not manifest an intent to relinquish Fork Road's claims.

[¶23] Furthermore, prior to the alleged waiver, MBC questioned Mr. Hancock on Fork Road's other claims: MBC damaged the property and HVAC system, removed fixtures from the building, and MBC's departure and treatment of the building. The record thus refutes MBC's contention that it limited its scope of questioning to its detriment.

---

[2] MBC presents two Arkansas cases in its Reply Brief asserting "a party can verbally limit the claims it had been pursuing." *See Avery v. Turn Key Health Clinics, LLC*, Case No. 5:18-CV-05075, 2020 WL 714176, at *8 (W.D. Ark. Feb. 12, 2020); *Self v. Taylor*, Case No. 5:15-CV-119 SWW/BD, 2016 WL 4392842, at *1 (E.D. Ark. June 22, 2016). In each case, the defendant affirmatively stated that he was no longer pursuing claims against specific individuals. These cases are distinguishable from the current case where MBC argues Fork Road impliedly waived specific issues because its representative failed to recite each claim in his testimony.

[¶24] Two cases are instructive on the issue of arbitrators determining issues not presented to them and both are distinguishable. In *JBC*, the plaintiff submitted a list of stipulated claims for the arbitrator to determine, one of which asked the arbitrator to apply a total cost damages provision to calculate damages. *JBC*, 843 P.2d at 1193, 1196. The arbitrator refused to apply the provision and instead fashioned his own remedy. *Id.* The district court found the arbitrator exceeded his authority by straying from the question presented to him and creating his own damage award, and we affirmed. *Id.* at 1193-94, 1196-97.

[¶25] We also held an arbitration panel exceeded its authority in *Matter of Longwell*. 2022 WY 56, ¶ 27, 508 P.3d at 736. The dispute was over the compensation owed to a rancher who lost livestock to grizzly bear predation and the panel was tasked with "a simple mathematical calculation—multiply the number of 'confirmed' kills by 3.5." *Id.* at ¶ 17, 508 P.3d at 732. Instead of determining the single issue, the panel "sua sponte proceeded to recalculate the number of 'confirmed' and compensatory kills." *Id.* We held that issue was not presented to the panel, and it exceeded its powers in addressing it. *Id.* at ¶ 27, 508 P.3d at 736.

[¶26] In both *Longwell* and *JBC* we recognized that party stipulations to the claims or issues before an arbitrator may be determinative of the arbitrator's authority and the issues he may address. *See Longwell*, 2022 WY 56, ¶ 17, 508 P.3d at 732; *JBC*, 843 P.2d at 1196. The arbitrator here properly relied on the stipulated list to determine the issues before him, and Mr. Hancock's testimony did not limit the issues. Therefore, the arbitrator did not exceed his authority.

## II. *The arbitrator's determination that MBC was not the prevailing party and therefore not entitled to attorney fees was not a manifest error of law.*

[¶27] MBC next argues the arbitrator's award should be vacated for manifest error. In reviewing for manifest error, this Court shows "substantial deference to the decision of the arbitrator." *Skaf*, 2021 WY 105, ¶ 34, 495 P.3d at 897 (quoting *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 6, 248 P.3d 644, 646 (Wyo. 2011)). "[A]rbitrators have broad powers to make factual determinations, and . . . the weight and sufficiency of the evidence is for the arbitrators to determine." *Welty*, 2005 WY 157, ¶ 21, 123 P.3d at 926 (deferring to an "arbitrator's findings on the weight and sufficiency of evidence" where "there was evidence to support" a claim for promissory estoppel). The bar to overturn an arbitrator's award is high:

> [W]e are reluctant to disturb an arbitrator's just solution to a controversy, even if it differs from the resolution we might have chosen, had we been in the arbitrator's place. As a voluntary method for resolution of disputes, arbitration is

8

> embedded in the public policy of Wyoming and is favored by this court.

*Skaf*, 2021 WY 105, ¶ 34, 495 P.3d at 898 (quoting *Worman*, 2011 WY 54, ¶ 6, 248 P.3d at 646).

[¶28]  This Court will vacate an arbitration award based on "a manifest mistake of fact or law appearing upon the face of the award." *Id.* at ¶ 36, 495 P.3d at 898 (quoting *JBC*, 843 P.2d at 1194-95). MBC "cannot 'rely on mere legal error' to vacate an arbitrator's award confirmed by the district court. 'An arbitrator's erroneous interpretations or applications of law are not reversible.'" *Id.* at ¶ 37, 495 P.3d at 899 (quoting *Worman*, 2011 WY 54, ¶ 12, 248 P.3d at 648) (internal citations omitted).

[¶29]  This Court adopted a three-element test to determine manifest error:

1.  The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.

2.  The arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

3.  The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Id.* at ¶ 38, 495 P.3d at 899 (quoting *Garrity v. McCaskey*, 612 A.2d 742, 747 (Conn. 1992)). "Knowledge of the operative legal principle and its proper application can be inferred only if the court finds an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." *Id.* at ¶ 38, 495 P.3d at 900 (quoting *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750-51 (Del. 2014)).

[¶30]  MBC argues the arbitrator committed manifest error by determining MBC was not the prevailing party entitled to attorney fees. It argues not only did MBC prevail on the central issues of the case, but looking to the litigation as a whole, MBC won on several claims and improved its position through the litigation. MBC first argues that failing to apply a central-issue analysis was a manifest error of law. *Garrison v. CC Builders, Inc.*, 2008 WY 34, ¶ 47, 179 P.3d 867, 879 (Wyo. 2008). It argues that in a mixed outcome case, *Garrison* mandates the analysis of the central issue, and whichever party prevails on that central issue is the prevailing party. *Id.*

[¶31] The Garrisons alleged the home builder had grossly overcharged them for construction of a new home. *Id.* at ¶ 9, 179 P.3d at 871. The homeowners, the Garrisons, sued in district court for breach of contract, alleging the builder promised to build the home for a certain cost by a certain date and failed to do so, while also alleging fraud and negligent misrepresentation. *Id.* The builder counterclaimed alleging breach of contract for failure to pay amounts due for work completed. *Id.* at ¶ 10, 179 P.3d at 871. The district court held in favor of the Garrisons on the breach-of-contract claim, awarded them $72,062.77 in damages, but also concluded the builder did not commit fraud. *Id.* at ¶¶ 12, 59, 179 P.3d at 871, 881. In awarding costs, the district court held the case "fundamentally was a breach of contract case, won for the most part by the Garrisons" and the "central issue . . . was determined in their favor" making the Garrisons the prevailing party. *Id.* at ¶ 47, 179 P.3d at 879. This Court articulated the relevant question on appeal regarding the prevailing party analysis was "whether the trial court reasonably could have concluded as it did, given the circumstances." *Id.* at ¶ 42, 179 P.3d at 878. We affirmed the prevailing party determination, holding the district court did not abuse its discretion in awarding the Garrisons attorney fees as the prevailing party. *Id.* at ¶ 47, 179 P.3d at 879.

[¶32] MBC relies on *Garrison* to argue the central-issue analysis is mandatory, and the arbitrator committed manifest error in not analyzing the prevailing party through that lens. MBC argues that it won on the main issues—the breach-of-contract claims for Fork Road's refusal to accept the estoppel certificate and the insurance claim. The certificate and insurance claims were what started the litigation and what Fork Road and the arbitrator identified as the main claims at issue. MBC argues that the arbitrator was required to analyze the central issue to determine the prevailing party and failing to do so was manifest error.

[¶33] MBC's reliance on *Garrison* is misplaced. In *Garrison*, this Court simply held that the district court could have reasonably concluded as it did in awarding costs to the Garrisons by analyzing the central issue of the case and we affirmed. *Id.* at ¶¶ 42, 47, 179 P.3d at 878-79. Yet *Garrison* does not require this result, nor does it announce a mandatory central-issue analysis, rather it offers an additional context to view the prevailing party in a mixed-outcome case. *See id.* at ¶ 47, 179 P.3d at 879. In fact, *Garrison* holds that awarding costs is a discretionary function, not a mandatory one. *Id.* at ¶ 42, 179 P.3d at 878. It was within the district court's discretion to analyze the central issue to determine the prevailing party, but a court is not restricted to a central-issue analysis. *See id.* at ¶¶ 42, 47, 179 P.3d 878-79. Similarly, an arbitrator is not restricted to a central-issue analysis in determining a prevailing party entitled to a fee award.

[¶34] MBC also argues that, looking to the litigation as a whole, it prevailed on several significant issues which improved its position and therefore should have been awarded costs as the prevailing party. The arbitrator disagreed and found that neither party improved its position through litigation because "both parties expended far more on the case than they recovered" and awarding fees would create an inequitable windfall. This

10

determination is well within his discretion. *See McGuire v. Lowery*, 2 P.3d 527, 534 (Wyo. 2000); *see also* John R. Schleppenback, *Winning the Battle but Losing the War: Towards a More Consistent Approach to Prevailing Party Fee Shifting in the Contractual Context*, 12 Fla. L. Rev. 185, 200-02 (2017).

[¶35]   MBC cannot show through clear and convincing evidence that the arbitrator erred, much less that an error was so obvious it would be instantly perceived by a qualified arbitrator. The first element of the *Skaf* test fails, thus no manifest error occurred.

### III.    The arbitrator's determination MBC was not entitled to the first-to-breach rule was not a manifest error of law.

[¶36]   MBC alleges that the arbitrator committed manifest error by failing to apply the first-to-breach rule. The first-to-breach rule states "a party cannot claim the benefit of a contract that it was the first to materially breach." *Maverick Benefit Advisors, LLC v. Bostrom*, 2016 WY 96, ¶ 14, 382 P.3d 753, 758 (Wyo. 2016) (citing *White v. Empire Express, Inc.*, 395 S.W.3d 696, 715-16 (Tenn. Ct. App. 2012)). MBC argues that Fork Road was the first to breach the lease agreement and therefore cannot assert breach claims against MBC nor offset any of MBC's recovery with its own damages. By failing to apply the rule, MBC argues, the arbitrator ignored a clearly applicable and well-defined rule of law that a qualified arbitrator would immediately recognize as error. We review the manifest error claim applying the *Skaf* test recited above. *Skaf*, 2021 WY 105, ¶ 38, 495 P.3d at 899.

[¶37]   In *Skaf*, this Court found the arbitrators committed manifest error by directly misstating well-settled law. *Id.* at ¶¶ 47-48, 495 P.3d at 903 (stating non-compete agreements are highly favored under Wyoming law, when, in fact, non-competes are highly disfavored). The arbitration panel took antithetical law and applied it to rewrite the terms of a contract, also contrary to well-settled law. *Id.* at ¶¶ 47-48, 495 P.3d at 903. MBC argues a similar error occurred here because the arbitrator failed to apply the first-to-breach rule. We disagree.

[¶38]   The arbitrator recognized the first-to-breach rule but determined that by staying in the building and honoring the lease after the breach, thereby accepting the benefits of the contract, MBC was not entitled to its application. In *Maverick*, this Court recognized a clear exception to the first-to-breach rule; when a prior material breach by an opposing party occurs "a [nonbreaching] party may lose its right to assert the first-to-breach rule if it accepts the benefits of the contract with knowledge of the breach." *Maverick*, 2016 WY 96, ¶ 16, 382 P.3d at 758. No manifest error is present.

[¶39]   We also reject MBC's suggestion that the arbitrator should have applied the safe harbor rule. The safe harbor rule allows a nonbreaching party to retain the first-to-breach protections where it continues to accept the benefits of the contract while unsuccessfully

trying to persuade the breaching party "to reject the repudiation and proceed honorably." *Maverick*, 2016 WY 96, ¶ 23, 382 P.3d at 761 (quoting *White*, 395 S.W.3d at 716). The arbitrator did not find MBC attempted to persuade Fork Road to honor the contract and the record does not show this finding was manifest error.

## *CONCLUSION*

[¶40]   The district court order confirming the arbitration award is affirmed. The arbitrator did not exceed his authority in determining the issues presented to him and the alleged waiver did not limit those issues. Likewise, the arbitrator did not commit manifest error in its prevailing party and first-to-breach rule analysis.