# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 86

APRIL TERM, A.D. 2023

August 28, 2023

MICHEL SKAF, M.D.,

Appellant
(Defendant),

v.

S-22-0290

WYOMING CARDIOPULMONARY
SERVICES, P.C., a Wyoming
corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
> Weston W. Reeves and Anna Reeves Olson, Park Street Law Office, Casper, Wyoming. Argument by Mr. Reeves.

*Representing Appellee:*
> Patrick J. Lewallen and Frank R. Chapman, Chapman Valdez & Lansing, Casper, Wyoming. Argument by Mr. Lewallen.

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

*FOX, C.J., delivers the opinion of the Court; KAUTZ, J., files a dissenting opinion.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    In 2015, Wyoming Cardiopulmonary Services (WCS) terminated Dr. Michel Skaf for cause. He opened his own cardiology office shortly thereafter and WCS sued him for breaching the non-compete clause (¶ 11.1) and agreement not to service WCS patients (¶ 11.2) in his employment contract with WCS. The parties went to arbitration and the arbitration panel (Panel) found Dr. Skaf violated the non-compete clause. It awarded WCS liquidated damages for Dr. Skaf's breach of the agreement not to provide service to WCS patients. On appeal, we determined the Panel committed manifest error in its non-compete decision.

[¶2]    The parties went back to the Panel which again found in favor of WCS. The Panel found the non-compete clause was unenforceable, but the liquidated damages award to WCS was still valid under ¶ 11.2. It also determined that Dr. Skaf was entitled to 50% of his deferred compensation, a $125,000 award, yet was not entitled to statutory interest. Dr. Skaf appealed the Panel's award under ¶ 11.2 and the refusal to grant interest. The district court confirmed the award, and we affirm.

## ISSUES

[¶3]    Dr. Skaf brings three issues on appeal which we restate as two:

>    1.    Was declining to award prejudgment interest on Dr. Skaf's deferred compensation manifest error?

>    2.    Was Dr. Skaf barred from relitigating the Panel's liquidated damages award under ¶ 11.2 because he failed to bring the issue on appeal in *Skaf I*?

## FACTS

[¶4]    Dr. Skaf began practicing as a cardiologist with WCS in Casper in 2004. In 2009, Dr. Skaf became a shareholder of WCS and signed a Shareholder Employment Agreement (Agreement). The agreement included two relevant provisions, ¶ 11.1, an agreement not to compete against WCS; and ¶ 11.2, an agreement not to service WCS patients if Dr. Skaf was terminated:

>    **11.    Covenant Not to Compete / Non-Solicitation**

>    >    11.1    <u>Covenant Not to Compete</u>. As an essential part of this Agreement, Employee covenants with Employer that if Employee's employment with Employer terminates for any reason, Employee

1

will not practice medicine for a period of two years following termination of employment within a 100-mile radius of Casper, Wyoming, and each outreach clinic of Employer. This covenant will apply to Employee whether he engages in the subsequent practice of medicine in an individual capacity, as an employee of another concern, or as a principal of a partnership, corporation, or other entity. Notwithstanding the foregoing, this provision is not intended to, nor will it be construed as, limiting in any way Employee's right to have hospital privileges or to perform medical procedures at Wyoming Medical Center, Casper, Wyoming.

11.2  Agreement Not to Service Patients – Liquidated Damages. If, at any time within two years after the termination of Employee's employment by Employer, for any reason, Employee directly or indirectly provides medical services to any patient of Employer, he will immediately purchase from Employer the goodwill associated with such patient. In view of the difficulty in evaluating goodwill, it is hereby agreed that the price of said goodwill will be measured by the fees and other charges billed by Employer with respect to such client during the 12-month period immediately preceding the effective date of Employee's termination of employment, but in no event less than $1,000 for each such patient. It is mutually agreed that this amount will be paid by Employee to Employer over a two-year period of time with 25 percent down and the balance in 24 equal monthly payments, including interest at the rate of 18 percent per annum.

[¶5]  WCS terminated Dr. Skaf for cause in 2015. Shortly thereafter he opened his own cardiology office, Casper Cardiology. WCS sued Dr. Skaf claiming he breached the non-compete clause in the Agreement and, ultimately, the parties went to arbitration as provided in the Agreement. WCS submitted five issues in its Demand for Arbitration: 1) Dr. Skaf breached the shareholder employment agreement and was terminated for cause; 2) Dr. Skaf violated the covenant not to compete and the non-solicitation clause and WCS should be

2

entitled to liquidated damages; 3) Dr. Skaf breached his agreement not to service WCS patients under ¶ 11.2 and WCS is entitled to damages; 4) Dr. Skaf is not entitled to his deferred compensation under the Agreement; and 5) Dr. Skaf should be enjoined from competing against WCS because he breached ¶ 11.1. Dr. Skaf denied these allegations and presented issues of his own: 1) WCS failed to provide the required notice to Dr. Skaf prior to termination; 2) Dr. Skaf was entitled to unpaid and deferred compensation, including interest at the statutory rate of 18%; 3) ¶ 11.1 regarding the covenant not to compete was invalid as a matter of public policy; and 4) defamation and intentional interference.

[¶6]   The Panel first analyzed the non-compete and determined it must be modified to be enforceable. It amended the non-compete to bar Dr. Skaf from practicing cardiology in Casper or any county where WCS had an office.

[¶7]   In a separate section entitled "Damage Claims by Petitioner" the Panel addressed damages Dr. Skaf owed to WCS for violating the non-compete and servicing former WCS patients. It separately addressed the contract language in ¶ 11.1 and ¶ 11.2:

> Under the WCS contract, Section 11.1 contains a covenant not to compete with WCS for a period of two (2) years. Under Section 11.2 of the contract, Dr. Skaf must also refrain for a period of two (2) years from treating any person who was a patient of WCS while [Dr.] Skaf was working for that entity. Further, Section 11.2 provides that if Dr. Skaf violates this provision and renders care to any former patient of WCS, he will pay "liquidated damages" which . . . shall be "in no event less than $1,000 for each such patient."

The Panel conducted a thorough analysis of the liquidated damages provision and determined portions of the provision were unenforceable as a matter of law but the $1,000 minimum per patient damages award was enforceable and awarded WCS $193,000 for the 193 WCS patients Dr. Skaf serviced.

[¶8]   The Panel summarized its decision in three main points: 1) the Panel did not have the power to issue an injunction, but advised that Dr. Skaf be enjoined from competing against WCS in any county where WCS operates for a period of two years; 2) the contract bars Dr. Skaf from offering cardiopulmonary services outside of the Wyoming Medical Center; and 3) Dr. Skaf cannot render care to any former WCS patients except for the 193 patients he purchased the goodwill of through the $193,000 liquidated damages award. It was later determined Dr. Skaf serviced an additional twenty-eight former WCS patients in violation of ¶ 11.2 and WCS was awarded an additional $28,000 of liquidated damages, bringing the award total to $221,000.

[¶9]    The award was confirmed by the district court and appealed to this Court. *Skaf v. Wyo. Cardiopulmonary Servs.*, 2021 WY 105, 495 P.3d 887 (Wyo. 2021) (*Skaf I*). In *Skaf I*, we addressed four issues, one of which is relevant here: whether the Panel made a manifest error of law in its award by basing its analysis and decision on the premise that non-competes are highly favored in Wyoming. *Id.* at ¶ 33, 495 P.3d at 897. We held such a misstatement was manifest error, but we did not discuss the liquidated damages award because it was not raised on appeal. *See generally id.* at ¶¶ 35-49, 495 P.3d at 898-903. We concluded that "[t]he Panel made a manifest error of law when it ignored a specific public policy arising from well-established judicial mandate—covenants not to compete are prima facie invalid unless necessary for the reasonable protection of the employer; that error led the Panel to rewrite the parties' contract." *Id.* at ¶ 48, 495 P.3d at 903. We reversed the district court's confirmation and vacated the award. *Id.* at ¶ 49, 495 P.3d at 903.

[¶10]   The parties returned to arbitration where Dr. Skaf asked the Panel to award him his deferred compensation under the Agreement, plus interest, and WCS asked the Panel not to award interest on Dr. Skaf's deferred compensation and to reaffirm the $221,000 liquidated damages award under ¶ 11.2. The Panel held that despite the fact the non-compete was unenforceable, the liquidated damages provision was a distinct and valid basis for the $221,000 award. It reasoned that ¶ 11.2 was not a non-compete clause but a separate provision which contemplated competition and established what damages must be paid if Dr. Skaf took patients from WCS. It concluded WCS was entitled to the $221,000 it had been awarded after the first arbitration. The Panel awarded Dr. Skaf $125,000 in deferred compensation but denied him interest on the award. WCS moved to confirm the award which Dr. Skaf opposed. The district court confirmed the award and Dr. Skaf appealed.

## STANDARD OF REVIEW

[¶11]   "This Court reviews '*de novo* a district court's decision to confirm, vacate, or modify an arbitration award. . . . without deference to the view of the trial court. At the same time, this Court, like the district court, shows substantial deference to the decision of the arbitrator." *Mountain Bus. Ctr., v. Fork Rd., LLC*, 2022 WY 147, ¶ 15, 520 P.3d 538, 542 (Wyo. 2022) (*MBC*) (quoting *Skaf I*, 2021 WY 105, ¶ 34, 495 P.3d at 897). Grounds for vacating an arbitration award are narrow and awards are subject to less scrutiny than other orders. *Skaf I*, 2021 WY 105, ¶ 34, 495 P.3d at 898 (quoting *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 6, 248 P.3d 644, 646 (Wyo. 2011)). "The reviewing court must observe the principle that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity." *Id.* (quoting *Worman*, 2011 WY 54, ¶ 6, 248 P.3d at 646). An appellant must show that an arbitrator committed manifest error by clear and convincing evidence. *MBC*, 2022 WY 147, ¶ 15, 520 P.3d at 542 (citing *Skaf I*, 2021 WY 105, ¶ 37, 495 P.3d at 899).

4

*DISCUSSION*

## I. It was not manifest error to withhold prejudgment interest on Dr. Skaf's deferred compensation award.

[¶12] Dr. Skaf first argues it was manifest error to deny him interest on the $125,000 deferred compensation award after the Panel's decision on remand. Manifest error is "a manifest mistake of fact or law appearing upon the face of the award." *MBC*, 2022 WY 147, ¶ 28, 520 P.3d at 545 (quoting *Skaf I*, 2021 WY 105, ¶ 36, 495 P.3d at 898). "Mere legal error" or erroneous interpretations or applications of law are not sufficient to vacate an arbitrator's award. *Id.* (quoting *Skaf I*, at ¶ 37, 495 P.3d at 899). We apply a three-element test when reviewing for manifest error:

1) The error must have been obvious and capable of being readily and instantly perceived by the average . . . arbitrator.

2) The arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

3) The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Id.* at ¶ 29, 520 P.3d at 545 (quoting *Skaf I*, at ¶ 38, 495 P.3d at 899).

[¶13] An arbitrator has broader discretion in tailoring awards, however. "The fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award." Wyo. Stat. Ann. § 1-36-114(a)(v) (2021). Our caselaw supports "the principle that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity." *Skaf I*, 2021 WY 105, ¶ 34, 495 P.3d at 898 (quoting *Worman*, 2011 WY 54, ¶ 6 248 P.3d at 646); *Welty v. Brady*, 2005 WY 157, ¶ 21, 123 P.3d 920, 926 (Wyo. 2005) (quoting *JBC of Wyo. Corp. v. City of Cheyenne*, 843 P.2d 1190, 1194 (Wyo. 1992)). An arbitration award cannot be vacated simply because the resolution differs from what this Court may have chosen, or because the relief could not be given by this Court. *Welty*, 2005 WY 157, ¶ 21, 123 P.3d at 926 (citing *JBC*, 843 P.2d at 1194). Additionally, we "defer to the arbitrators' right to consider the relative equities of the parties and fashion an award." *Id.* at ¶ 24, 123 P.3d at 927.

[¶14] In *Skaf I*, we determined that "the Panel made a manifest error of law in violation of specific, well-established public policy in its review" when it stated on the face of the award that non-competes were strongly favored in Wyoming, and it made a second manifest error of law by rewriting the parties' contract to make the non-compete conform

5

with the law. 2021 WY 105, ¶ 50, 495 P.3d at 903. The misstatement had "widespread public policy implications in great part because of its potential impact on all departing employees who are or may become subject to a non-compete agreement. . . . especially . . . for those who choose not to litigate." *Id.* at ¶ 33, 495 P.3d at 897. Such errors were obvious to the average arbitrator, the Panel was aware of the strong public policy *against* non-competes because of its reliance on *Hopper v. All Pet Animal Clinic, Inc.*, and the public policy was well defined, explicit, and clearly applicable. *Skaf I*, 2021 WY 105, ¶ 40, 495 P.3d at 900; *see also Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 539 (Wyo. 1993) ("The common law policy *against* contracts in restraint of trade is one of the oldest and most firmly established.") (citing Restatement (Second) of Contracts §§ 185-188 (1981) (Introductory Note at 35)), *overruled by Hassler v. Circle C Res.*, 2022 WY 28, 505 P.3d 169 (Wyo. 2022). The Panel's error in its analysis met all three elements of the manifest error test, and therefore this Court vacated the non-compete award.

[¶15]   The Panel originally determined Dr. Skaf forfeited all deferred compensation owed to him under the employment agreement because he was terminated for cause, which led to a 50% reduction in his deferred compensation, and he violated the non-compete agreement, causing an additional 50% reduction. After our holding in *Skaf I*, however, the Panel determined the non-compete was unenforceable and awarded Dr. Skaf 50% of his deferred compensation. Under Wyo. Stat. Ann. § 27-4-104(b) (2021) when "an employee . . . discharged from service . . . has [successfully brought] suit for wages earned and due . . . the court shall allow to the plaintiff interest on the past due wages at the rate of eighteen percent (18%) per annum from the date of discharge or termination[.]" Despite the statutory language, the panel stated "[u]nder the unique procedural situation presented, the Panel declines to award any party prejudgment interest or other interest on the awards made above."

[¶16]   Dr. Skaf argues that the Panel made a manifest error of law by denying him interest on his $125,000 deferred compensation award, in violation of the plain language of Wyo. Stat. Ann. § 27-4-104(b) which states a court "shall" award interest. Dr. Skaf overlooks the language of Wyo. Stat. Ann. § 1-36-114(a)(v), however; which states relief that "could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award." Because of the voluntary and informal nature of arbitration, awards "are subject to less intensive scrutiny" on review and arbitrators are free to weigh the relative equities of the parties and fashion an award outside the constraints put on a court. *JBC*, 843 P.2d at 1194; *accord Welty*, 2005 WY 157, ¶ 24, 123 P.3d at 927.

[¶17]   The Panel determined under the unique procedural circumstances of this case, with litigation ongoing since 2015, it would be inequitable to grant Dr. Skaf eighteen percent interest annually on his $125,000 deferred compensation award. Some of this rationale may lie in this Court's reversal of this case in 2021, the *Hassler* Court's rejection of the blue pencil rule that had been the law since *Hopper* and affected the outcome of the decision on

6

remand, and the excessive length of time it has taken to resolve this case. *Hassler*, 2022 WY 28, ¶¶ 29-30, 505 P.3d 169, 178-79 (Wyo. 2022).

[¶18]   The issue here differs from *Skaf I* because the manifest error of law occurred in the premise of that decision. The public policy determining the validity of the non-compete was directly misstated and further, the Panel proceeded to re-write an employment agreement neither party contracted for. The framework for the non-compete decision itself was flawed, which was the manifest error of law. Here, the Panel calculated a monetary award in which it is given considerable deference, and which allows it to weigh the equities of a result and stray from constrictions placed on a court. This case went to arbitration, the decision was vacated on appeal, the law regarding non-competes and the blue pencil rule changed, and the Panel rendered a decision on remand in harmony with the vacated decision and the law change. The Panel determined that based on the history of the case, it would be inequitable to grant interest on Dr. Skaf's deferred compensation award. This equitable relief, though perhaps not available to a court of law, does not rise to the level of a manifest error of law. In contrast, the error in *Skaf I* began with a policy statement that was antithetical to the well-established public policy of the state and led the Panel to ignore the parties' contractual intent. *See Skaf I*, 2021 WY 105, ¶ 41, 495 P.3d at 900-01.

[¶19]   The error here is also distinguishable from the error in *JBC*. In *JBC*, the plaintiff submitted a claim to the arbitrator asking him to apply a total cost damages provision for a breach of contract, but instead the arbitrator created his own consequential damages formula. *JBC*, 843 P.2d at 1193, 1195-96. We rejected the argument that the arbitrator's award of consequential damages should be affirmed because an arbitrator is given latitude in fashioning relief and held that "[a]n arbitrator exceeds his powers when he decides matters which were not submitted to him." *Id.* at 1196 (quoting *T & M Props. v. ZVFK Architects & Planners*, 661 P.2d 1040, 1044 (Wyo. 1983)). It was not manifest error to decline interest on the award.

## II.   *Dr. Skaf did not appeal the liquidated damages the Panel awarded in the first arbitration in his first appeal and he may not raise that issue in his second appeal.*

[¶20]   WCS argues Dr. Skaf is barred from appealing the Panel's decision awarding WCS liquidated damages under ¶ 11.2 because he did not raise it on the first appeal. Dr. Skaf argues the flip side, contending that WCS is not entitled to the second Panel's award of liquidated damages under ¶ 11.2 because WCS had not asked for it in the first arbitration, or raised it on appeal in *Skaf I* as an independent basis to affirm the first decision.

### A.   **WCS raised the liquidated damages issue in the first arbitration decision and was not required to cross-appeal to preserve its award under ¶ 11.2.**

[¶21]   Dr. Skaf contends the damages awarded in the first arbitration were attributable to the finding of a breach of the non-compete. He argues that WCS failed to raise the

7

liquidated damages issue under ¶ 11.2 in the first arbitration and could therefore not rely on it in the second proceeding to preserve its monetary award. However, WCS did present this issue to the Panel. In its Amended Demand for Arbitration, WCS stated "[Dr. Skaf] has breached his agreement not to service patients & liquidated damages portion of the shareholder employment agreement at section 11.2 and damages should be assessed against him."

[¶22] Dr. Skaf next argues that WCS was required to raise ¶ 11.2 as an independent basis to affirm on appeal the Panel's first decision. He relies on *Mad River* to support the proposition that WCS was required on the first appeal to preserve the alternative basis for the liquidated damages award under ¶ 11.2. *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 818 P.2d 1137, 1140 (Wyo. 1991). *Mad River* states, "With first decision reversal, *appellant* is not entitled to change the scope of the litigation in further proceedings." *Id.* (emphasis added). That does not address the issue here, whether the *appellee* is required to preserve claims by cross-appealing to avoid an implied reversal. *Compare Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 669 (Wyo. 1993) (*Triton Coal II*), *with Mad River*, 818 P.2d at 1140. In *Triton Coal II*, we concluded that an appellee is not required to cross-appeal issues it had won below. 846 P.2d at 669 ("The foregoing scenario creates the bizarre result of placing an appellant who does *not* appeal certain issues in a superior position to one who does and forces the winning party below to cross-appeal on issues he had won just to ensure that those issues would not be impliedly reversed."). WCS properly raised its argument for liquidated damages under ¶ 11.2 below and was not required to cross-appeal to preserve that basis for the award.

**B.      Dr. Skaf was required to raise the liquidated damages argument on appeal in *Skaf I* and because he failed to, he cannot do so now.**

[¶23] WCS argues that Dr. Skaf is barred from appealing the Panel's liquidated damages award under ¶ 11.2 because he failed to do so in the first appeal. A litigant's failure to raise an issue on a prior appeal may waive the issue, barring it from attack on a subsequent appeal. *BTU W. Res., Inc. v. Berenergy Corp.*, 2019 WY 57, ¶ 27, 442 P.3d 50, 58 (Wyo. 2019) (quoting *Triton Coal II*, 846 P.2d at 669).

[¶24] The issue then is whether the reversal in *Skaf I* allowed Dr. Skaf to relitigate the liquidated damages provision under ¶ 11.2. "A reversal on appeal 'affects only those portions of the judgment from which an appeal is actually taken' and does not affect unappealed issues. Law of the case and waiver apply to unappealed issues[,] and those issues cannot be relitigated on remand or on a second appeal." *BTU W. Res.*, 2019 WY 57, ¶ 27, 442 P.3d at 58 (quoting *Triton Coal II*, 846 P.2d at 669) (cleaned up). "If an appeal is taken from only a part of the judgment, the remaining part is res judicata, and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court's jurisdiction of the unappealed portion of the judgment." *Triton Coal II*, 846 P.2d at 669 (quoting 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[4.-3] at

8

131 (2d ed. 1983)). This rule is constrained by the requirement that a judgment can only be partially appealed if the appealed portion is severable from the rest of the case, meaning it must be independent from the remainder of the case. *BTU W. Res.*, 2019 WY 57, ¶ 28, 442 P.3d at 58 (citing *Triton Coal II*, 846 P.2d at 669). If the appeal is not severable, a reversal will extend to the entire case. *Id.* (citing *Triton Coal II*, 846 P.2d at 669).

[¶25]   The question becomes whether the non-compete issue under ¶ 11.1 appealed in *Skaf I* is severable from the liquidated damages provision in ¶ 11.2. "In order to be severable, and therefore appealable, any determination of the issues so settled by the judgment must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed." *BTU W. Res.*, 2019 WY 57, ¶ 29, 442 P.3d at 59 (quoting *Triton Coal II*, 846 P.2d at 669). In *Triton Coal I*, Husman, Inc. contracted with Triton Coal to remove topsoil from a coal mine. *Husman, Inc. v. Triton Coal Co.*, 809 P.2d 796, 798 (Wyo. 1991) (*Triton Coal I*). After beginning work, Husman encountered substantial moisture in the soil making the job significantly more difficult. *Id.* The contract was eventually terminated and afterwards, a dispute arose regarding the invoices Husman submitted to Triton which reflected the significant difficulty and increased time and work required to complete the project. *Id.* Triton refused to pay a substantial portion of the invoices and Husman sued for breach of contract for failure to disclose the soil condition and failure to pay $246,551.72 of invoices, intentional and negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. *Id.*; *Triton Coal II*, 846 P.2d at 666-67.

[¶26]   The district court granted Triton summary judgment on all claims and Husman appealed, claiming there were genuine issues of material fact concerning the tort claims and the breach of an implied covenant of good faith and fair dealing. *Triton Coal I*, 809 P.2d at 798; *Triton Coal* II, 846 P.2d at 667. Husman did not identify Count II, the failure to pay $246,551.72 of invoices, as an appealed issue. *Triton Coal II*, 846 P.2d at 667. This Court found genuine issues of material fact regarding the tort claims and the breach of an implied covenant claim and reversed and remanded. *Id.*; *Triton Coal I*, 809 P.2d at 802. On remand, the district court allowed Husman to retry all claims, including Count II, despite Triton's objection. *Triton Coal II*, 846 P.2d at 667.

[¶27]   Triton appealed whether Husman was barred from relitigating Count II because it was not appealed in the first appeal, arguing the district court's decision on Count II became the law of the case and therefore the issue was waived.[1] *Id.* We concluded that the issues appealed were not interwoven with Count II. *Id.* at 670. The issues did not share any of the same elements with Count II, damages for each claim were calculated differently, and the appealed claims were not dependent on any factual or legal determination regarding Count

---

[1] In *Triton Coal II*, this Court recognized that waiver and "law of the case" doctrine are generally distinct doctrines, but under these facts they were indistinguishable. *Id.* at 667-68.

9

II; therefore, it was severable from the issues on appeal and Husman was barred from relitigating Count II on remand. *Id.*

[¶28]   In *Anesthesiology Consultants of Cheyenne v. Stevens*, we determined the law of the case doctrine did not bar a doctor from litigating on remand the breach of contract claim against him. 2020 WY 67, ¶¶ 23, 25, 464 P.3d 584, 591-92 (Wyo. 2020) (*Stevens II*). That case originated with a medical group, Anesthesiology Consultants of Cheyenne (ACC), suing one of its partners, Dr. Stevens, for usurping business opportunities from the group when he began providing medical services at a different medical office without billing and collecting through ACC. *Stevens v. Anesthesiology Consultants of Cheyenne*, 2018 WY 45, ¶¶ 12-13, 415 P.3d 1270, 1276 (Wyo. 2018) (*Stevens I)*. ACC brought various claims against Dr. Stevens, including breach of fiduciary duties, breach of contract, and breach of the covenant of good faith and fair dealing. *Id.* at ¶ 17, 415 P.3d at 1277. The district court granted summary judgment in favor of ACC on those three claims. *Id.* at ¶ 19, 415 P.3d at 1277-78. Dr. Stevens appealed the summary judgment regarding breach of fiduciary duties and this Court found there were genuine issues of material fact and reversed. *Id.* at ¶¶ 27, 32, 415 P.3d at 1280, 1283.

[¶29]   On remand, ACC argued that Dr. Stevens was barred from relitigating the breach of contract claim because he only appealed the breach of fiduciary duties claim in *Stevens I*. *Stevens II*, 2020 WY 67, ¶ 23, 464 P.3d at 591. The district court disagreed and submitted the breach of contract claim to the jury. *Id.* ACC appealed to this Court, and we determined that Dr. Stevens was not barred from relitigating the breach of contract issue because the appealed issue in *Stevens I* was not severable from the breach of contract issue. *Id.* at ¶¶ 25-26, 464 P.3d at 592. We concluded that "the same matters and issues [were] embraced within all ACC's claims—breach of fiduciary duties, breach of covenant of good faith and fair dealing, and breach of contract." *Id.* at ¶ 25. The dispositive issue of each claim was whether Dr. Stevens usurped ACC's business opportunity and the answer to that question would determine the result of all three claims. *Id.* Since the three claims could not be separated, the appealed issue was not severable from the nonappealed issues and the appeal was of the entire summary judgment order rather than of the singular claim. *Id.* at ¶ 26, 464 P.3d at 592.

[¶30]   In contrast, the Panel here clearly distinguished between WCS' liquidated damages claim under ¶ 11.2 and its non-compete claim under ¶ 11.1:

> Section 11.1 contains a covenant not to compete with WCS for a period of two (2) years. Under Section 11.2 of the contract, Dr. Skaf must also refrain for a period of two (2) years from treating any person who was a patient of WCS while Skaf was working for that entity. Further, Section 11.2 provides that if Dr. Skaf violates this provision and renders care to any former

10

> patient of WCS, he will pay "liquidated damages" . . . "in no
> event less than $1,000 for each such patient."

The Panel found that Dr. Skaf rendered care to 221 former WCS patients and determined Dr. Skaf must pay WCS $1,000 per patient, for a total damages calculation of $221,000. Paragraph 11.1's language did not provide this type of remedy calculation.

[¶31] Paragraphs 11.1 and 11.2 provided distinct factual scenarios that entitled WCS to distinct remedies. Under ¶ 11.1, Dr. Skaf was barred from providing cardiology services to any client within a county where WCS or its satellite clinics operates for two years. Under ¶ 11.2, Dr. Skaf was required to pay liquidated damages for any former WCS patient he provided care to anywhere in the world within two years of leaving employment. The Panel recognized that ¶ 11.2 "is not a non-compete clause and, in fact, contemplates competition but establishes an agreement as for liquidated damages to be paid if that competition results in taking existing customers of [WCS] during a certain time frame." The Panel found that Dr. Skaf provided care to 221 former WCS patients in violation of ¶ 11.2 and awarded WCS liquidated damages for each patient. These issues are severable; they are wholly independent of each other and the determination of one issue did not affect the determination of the other. WCS was awarded liquidated damages in the first arbitration, which Dr. Skaf did not appeal in *Skaf I*. He is therefore barred from appealing that award in this subsequent appeal.

### *CONCLUSION*

[¶32] The Panel is entitled to weigh the equities of the parties and fashion relief not available to a court of law; therefore, it did not commit manifest error by denying Dr. Skaf interest on his deferred compensation award. Additionally, because Dr. Skaf did not appeal the Panel's award under ¶ 11.2 in *Skaf I*, he is barred from doing so now. The district court's confirmation of the Panel's award is affirmed.

**KAUTZ, J., dissenting.**

[¶33]  I respectfully dissent.

[¶34]  In *Skaf I*, we concluded the arbitrators made a manifest error of law on the face of the arbitration award when they said:  "Wyoming law *strongly supports covenants not to compete* and the enforcement of the same *permits public policy* to be served."  *Skaf v. Wyoming Cardiopulmonary Servs., P.C. (Skaf I)*, 2021 WY 105, ¶ 33, 495 P.3d 887, 897 (Wyo. 2021) (emphasis added).  We stated the opposite is actually true; "[o]ur public policy is clear—covenants not to compete are prima facie invalid unless necessary for the reasonable protection of the employer."  *Id*., ¶ 39, 495 P.3d at 900.  We noted "arbitral awards that flaunt the law" cannot stand and vacated the arbitration award in its entirety. *Id*., ¶ 48, 495 P.3d at 903.  Although our decision primarily discussed the arbitrators' efforts to rewrite the non-compete terms, the essential foundation for our ruling was the total failure of the employer to establish a restraint on trade was reasonably necessary.  That foundation necessarily applies to all parts of the employment contract which restrain trade in violation of public policy—both ¶ 11.1 and ¶ 11.2.

[¶35]  Although the arbitrators and the majority describe ¶ 11.1 as a non-competition agreement and ¶ 11.2 as a separate non-solicitation agreement, both sections are in fact part of a single restraint on trade.  Paragraph 11.1 prohibits competition which serves any person, whether a former patient of WCS or not.  Paragraph 11.2 provides liquidated damages if the non-competition provision is violated by serving former patients.  *Skaf I* described ¶ 11.2 simply as a liquidated damages provision, not as a separate covenant.  *Id*., ¶ 6, 495 P.3d at 891.  Because both ¶ 11.1 and ¶ 11.2 are part of a single restraint on trade, the lack of any showing by the employer that either provision was reasonably necessary invalidates both.

[¶36]  Even if ¶ 11.2 was entirely independent from ¶ 11.1, it nevertheless is a restraint on trade and violative of public policy.  All the reasons that ¶ 11.1 is contrary to public policy—that it restrains trade and competition—apply equally to ¶ 11.2.  The arbitrators' attempt to separate ¶ 11.2 from ¶ 11.1, and their enforcement of ¶ 11.2 without showing it was reasonably necessary to protect interests of the employer, flaunt the law.  It is logically impossible to conclude ¶ 11.1 is contrary to public policy and invalid, and then to conclude ¶ 11.2 is not contrary to the same public policy.  The holding of *Skaf I* necessitates a conclusion that both provisions are invalid.

[¶37]  The majority concludes the only issue appealed in *Skaf I* was the application of ¶ 11.1.  Consequently, it holds Dr. Skaf cannot now challenge the arbitrators' award under ¶ 11.2.  I conclude otherwise.  Both sections are restraints on trade, both prohibit competition, and both fail because of the original manifest error of the law on the face of the arbitrators' decision—their application of an incorrect public policy.  Further, ¶ 11.1 and ¶ 11.2 are

part and parcel of a single restraint on trade/covenant not to compete. Our ruling in *Skaf I* requires a recognition that each is invalid. I would reverse.